# Disclosure of Advisory Committee Deliberative Materials

The Federal Advisory Committee Act requires advisory committees to make available for public inspection written advisory committee documents, including predecisional materials such as drafts, working papers and studies.

The disclosure exemption available to agencies under exemption 5 of the Freedom of Information Act for predecisional documents and other privileged materials is narrowly limited in the context of the Federal Advisory Committee Act to privileged inter-agency or intra-agency documents prepared by an agency and transmitted to an advisory committee.

April 29, 1988

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
OFFICE OF LEGAL POLICY

## Introduction and Summary

This responds to your request for the views of this Office concerning the extent to which exemption 5 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is available to withhold deliberative materials prepared by an advisory committee that would otherwise be subject to the disclosure requirements of section 10(b) of the Federal Advisory Committee Act, 5 U.S.C. app. I ("FACA").[1] Section 10(b) provides in pertinent part that "[s]ubject to section 552 of title 5,

---

[1] This memorandum addresses only exemption 5 of FOIA To the extent one of the other eight statutory exemptions applies, the covered documents are independently protected from disclosure. We also emphasize both that separation of powers may preclude Congress from applying FACA to certain advisory groups and that documents subject to the disclosure requirements of section 10(b) may be withheld pursuant to a valid claim of executive privilege. We do not here address these constitutional bases for withholding documents but observe that several courts have described the threat posed by a literal reading of FACA to presidential powers *See, e g , National Anti-Hunger Coalition v. Executive Comm of the President's Private Sector Survey on Cost Control,* 557 F. Supp. 524, 530 (D.D.C.), *aff'd and remanded,* 711 F.2d 1071 (D C Cir.), *judgment amended,* 566 F. Supp. 1515 (D.D.C. 1983) (FACA is "obscure, imprecise, and open to interpretations so broad that    it would threaten to impinge unduly upon prerogatives preserved by the separation of powers doctrine"); *Nader v Baroody,* 396 F. Supp 1231, 1234 (D D.C. 1975), *vacated as moot,* No 75–1969 (D.C Cir Jan. 10, 1977) ("Nowhere is there an indication that Congress intended to intrude upon the day-to-day functioning of the presidency . . . ."). Thus, for example, it is the government's position that the American Bar Association Standing Committee on the Federal Judiciary is not "utilized" by the President and therefore not subject to FACA, or alternatively, that the application of FACA to the ABA Committee would unconstitutionally impinge on the President's exclusive authority to nominate and appoint Article III judges, subject to the advice and consent function of the Senate. U.S. Const. art. II, § 2, cl. 2. *Washington Legal Found v. United States Dept. of Justice,* 691 F. Supp. 483 (D D C. 1988) In addition, congressional disclosure statutes, including FACA, necessarily raise separation of powers and executive privilege issues as applied to communications among the President and his advisors and advice prepared for the President by his advisors *See, e g , Nixon v. General Serv Admin.,* 433 U.S. 425, 441–55 (1977); *Soucie v David,* 448 F 2d 1067, 1073 (D.C. Cir. 1971); *National Anti-Hunger Coalition,* 557 F. Supp. at 530. Because the operation of presidential powers in the context of FACA is not the subject of the present inquiry directed to this Office, the discussion herein is simply meant to be illustrative.

United States Code, the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection."[2] Exemption 5 of FOIA exempts inter-agency and intra-agency deliberative or predecisional documents from disclosure.[3] The issue presented is the scope to be given to exemption 5 in light of section 10(b)'s enumeration of deliberative documents such as working papers and drafts as being specifically subject to disclosure.[4]

We conclude that FACA requires disclosure of written advisory committee documents, including predecisional materials such as drafts, working papers, and studies.[5] The disclosure exemption available to agencies under exemption 5 of FOIA for predecisional documents and other privileged materials is narrowly limited in the context of FACA to privileged "inter-agency or intra-agency" documents prepared by an agency and transmitted to an advisory committee. The language of the FACA statute and its legislative history support this restrictive application of exemption 5 to requests for public access to advisory committee

---

[2] Section 10(b) of FACA reads in full:
    Subject to section 552 of title 5, United States Code, the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist.

[3] Exemption 5, 5 U.S.C. § 552(b)(5), provides that the disclosure obligations of FOIA do not "apply to matters that are— (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency "

[4] Public Citizen Litigation Group has also requested DOJ to issue a policy statement clarifying that the deliberative process exemption does not "shield from public scrutiny" the drafts, working papers, and other deliberative documents prepared by advisory committees. Public Citizen represented the ACLU in its suit to enjoin the Attorney General's Commission on Pornography from holding meetings until it released drafts and working papers. *ACLU v Attorney General's Commission on Pornography, Department of Justice,* No. 86–0893 (D.D.C. filed Apr. 3, 1986) Although the Commission initially asserted that the documents were covered by exemption 5 as incorporated by FACA, the parties stipulated a settlement providing for release of the documents and the suit was withdrawn

[5] This Office has not previously addressed this issue directly Soon after FACA was enacted, we noted the potential conflict between exemption 5 and section 10, but did not opine on the proper resolution of the issue Memorandum for Dwight A. Ink, Assistant Director, Office of Management and Budget, from Roger C. Cramton, Assistant Attorney General, Office of Legal Counsel, *Re Treatment of Exemption 5 of the Freedom of Information Act in Denying Access to Meetings and Records of Federal Advisory Committees* (Jan. 2, 1973) In 1974, we advised the Clemency Board that it was an advisory committee and therefore subject to the disclosure provisions of FACA The memorandum by Assistant Attorney General Antonin Scalia identified three potentially applicable FOIA exemptions, but conspicuously did not cite exemption 5. Memorandum for the Clemency Board, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel (Sept. 24, 1974). In 1982, in the process of rendering an opinion that activities by staff members on task forces to President's Private Sector Survey on Cost Control did not fall within the ambit of FACA, we noted in dicta and without analysis that materials made available to committee had to be made available to the public under section 10(b), unless exempted under FOIA, in which case it "need not be made publicly available under 10(b) of FACA." Memorandum for Fred F. Fielding, Counsel to the President, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re. President's Private Sector Survey on Cost Control* at 7 (Nov. 1, 1982) We also opined in 1982 that advisory committee documents are available through FOIA requests made to the supervising agency and that the advisory committee must cooperate, but we did not specifically address the impact of exemption 5 Memorandum for Fred F. Fielding, Counsel to the President, from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Applicability of the Freedom of Information Act to Federal Advisory Committee* (Dec. 30, 1982).

documents. Moreover, since an advisory committee is not itself an agency, this construction is supported by the express language of exemption 5 which applies only to inter-agency or intra-agency materials.[6]

We emphasize that despite these conclusions many documents that are part of the advisory committee process will not be subject to disclosure. Section 10(b) itself applies only to materials made available to or prepared for or by an advisory committee established by statute or reorganization plan or established or utilized by the President or an agency. 5 U.S.C. app. I, §§ 3(2), 10(b). Accordingly, in determining whether a document is to be disclosed the first issue is not whether it is subject to an exemption under 5 U.S.C. § 552 but whether it meets this threshold definition.

## Analysis

### A. Defining the Class of Documents to which Section 10(b) Applies.

By the express terms of section 10(b), deliberative materials, in order to be subject to disclosure, must be "made available to or prepared for or by" an advisory committee, 5 U.S.C. app. I, § 10(b), which is established by statute or reorganization plan or *"established or utilized by the President"* or an agency. *Id.* § 3(2)(B) (emphasis added).[7] The courts and this Office have construed the concept of advisory committees established or utilized by the President or an agency to preclude section 10(b)'s application to the work prepared by a staff member of an advisory committee or a staffing entity within an advisory committee, such as an independent task force limited to gathering information, or a subcommittee of the advisory committee that is not itself established or utilized by the President or agency, so long as the material was not used by the committee as a whole. The reasoning behind the construction of the concept is straightforward:

> [Such staffing entities or subcommittees] do not directly advise the President or any federal agency, but rather provide information and recommendations for consideration to the Committee. Consequently, they are not directly "established or utilized" by the President or any agency . . . .

*See National Anti-Hunger Coalition*, 557 F. Supp. at 529. *See also* Memorandum for Fred H. Wybrandt, Chairman, National Crime Information Center Ad-

---

[6] We do not address or express any opinion in this memorandum on the separate issue of the disclosure obligations of the agency under FOIA with respect to written materials delivered from an agency advisory committee to an agency.

[7] FACA defines an advisory committee as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof, . . . which is—(A) established by statute or reorganization plan, or (B) established or utilized by the President, or (C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U S.C. app I, § 3(2).

visory Policy Board, from Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel (Apr. 28, 1987) ("Wybrandt Memorandum"). This limitation on section 10(b)'s disclosure requirement has important practical consequences. For example, the President established a presidential advisory committee, the President's Private Sector Survey on Cost Control ("Survey"), funded by the Department of Commerce, but whose staff had to be paid for by the private sector.[8] A non-profit Foundation for the Survey, chaired by members of the Executive Committee, organized the private staff into thirty-six task forces to gather information, perform studies, and draft recommendations and reports for the Executive Committee. Based on this structure, the district and appellate courts concluded that the non-profit task forces were not subject to FACA because they did not provide advice directly to the President or any agency, but rather performed activities analogous to staff work. *National Anti-Hunger Coalition*, 557 F. Supp. at 529–30; 711 F.2d at 1075–76.[9]

Based on the same reasoning, as well as an exhaustive survey of the FACA legislative history, this Office recently concluded that subcommittees of the National Crime Information Center ("NCIC") Advisory Policy Board are likewise not covered by FACA because they "perform preparatory work or professional staff functions in aid of, but not displacing, the actual advisory committee function performed by the Board." Wybrandt Memorandum at 1.[10] Although each advisory committee structure will determine the results in a particular case, the general point can be made that FACA compels disclosure of a limited subset of information, namely the material used by the advisory committee or subgroup established or utilized by the ultimate decision-maker, which typically will be an agency or the President.

## B. The Scope of Exemption 5 in the Context of Section 10(b)'s Disclosure Requirements.

Assuming that documents are subject to section 10(b), we turn to the scope of FOIA's exemption 5 under FACA. First, it is necessary to presume that Congress did not intend to create an irreconcilable conflict between the two laws; *i.e.*, on the one hand, to protect deliberative advisory committee materials from public inspection via exemption 5, but on the other, to order detailed disclosure of all "records, reports, transcripts, minutes, appendixes, working papers, drafts, stud-

---

[8] Exec. Order No. 12369, sec. 3(e), 3 C.F.R. 190 (1983).

[9] On the other hand, the subcommittee officially established by the Survey was held to be covered by FACA because it "is responsible for reviewing the task force reports and making detailed recommendations to the President and the affected federal agencies." *National Anti-Hunger Coalition*, 711 F.2d at 1072. The D.C. Circuit panel also states in dictum that if the task force reports were in fact not exhaustively reviewed and revised by the Executive Committee, but were merely rubber-stamped recommendations given little or no independent consideration, it would be within a district court's power to find that the provisions of FACA apply to the task forces as well. *Id.* at 1075–76.

[10] As in our prior opinion, however, "[w]e must emphasize that our opinion should not in any way be read as support for attempting to use subcommittees to evade the . . . requirements of FACA." Wybrandt Memorandum at 9.

ies, agenda, or other documents" that are otherwise covered by FACA.[11] The potential conflict is underscored by the obligation to disclose committee drafts, working papers and studies, whereas exemption 5 is designed to preserve the integrity of precisely these types of "predecisional" internal deliberations from public view.[12] The two objectives, if not harmonized, would present an insurmountable internal statutory conflict.

We conclude that exemption 5 is not generally applicable to materials prepared by or for an advisory committee, but that it does extend to protect privileged documents delivered from the agency to an advisory committee. This construction gives meaning to exemption 5 without vitiating Congress' enumeration of deliberative documents such as working papers and drafts as subject to disclosure. It is also supported by a close reading of exemption 5 itself. Because by its terms exemption 5 protects only inter-agency and intra-agency documents and because an advisory committee is not an agency, documents do not receive the protection of exemption 5 by virtue of the fact that they are prepared by an advisory committee. On the other hand, documents prepared by an agency do not lose the protection of exemption 5 by virtue of the fact that they are delivered to an advisory committee.[13]

At the outset, we note that the application of FOIA to advisory committees in the FACA statute is not a model of draftsmanship.[14] Most glaringly, Congress incorporated the FOIA exemptions, yet gave no explicit consideration to

---

[11] Pursuant to section 10(b), the right of public access to deliberative committee documents expires when the "committee ceases to exist." The material available for public inspection is thereafter restricted by the statute to the "report made by every advisory committee and, where appropriate, background papers prepared by consultants." 5 U.S.C. app. I, § 13. The Director of OMB is responsible for filing this material, subject to FOIA, with the Library of Congress where it is maintained for public inspection in a depository *Id* The depository materials will presumptively not include the preparatory material covered by section 10(b), such as working papers, drafts, studies, and agendas, unless the materials are incorporated in the committee report or are appropriate background papers prepared by consultants.

[12] Exemption 5 in general protects agency documents that would normally be privileged in civil discovery. *See NLRB v Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). To date, the Supreme Court has recognized five privileges, including those expressly mentioned in the legislative history, as well as those that are "well-settled" in the case law or are "rough analogies" to privileges recognized by Congress. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801–02 (1984). The privilege primarily at issue in the intersection of FOIA and FACA is that protecting advice and recommendations which are part of the deliberative processes of government.

In addition to deliberative process, exemption 5 protects attorney work product, *Hickman v. Taylor*, 329 U.S. 495, 509–10 (1947); *FTC v. Grolier, Inc.*, 462 U.S 19, 25–28 (1983), matters covered by attorney-client privilege, *NLRB*, 421 U.S. at 154, confidential commercial information generated to award contracts, *Federal Open Market Comm. of the Fed Reserve Sys. v Merrill*, 443 U.S 340, 360 (1979), third-party witness statements to military investigators, *Weber Aircraft*, 465 U.S. at 792, and perhaps other privileges as well, *see Durns v. United States Dept of Justice*, 804 F.2d 701 (D.C. Cir.), *reh'g en banc denied*, 806 F.2d 1122 (D.C. Cir. 1986) (presentence reports); *Hoover v. United States Dep't. of Interior*, 611 F.2d 1132, 1138–42 (5th Cir. 1980) (expert witness reports).

[13] We express no opinion on the operation of exemption 5 in the context of a FOIA request to an agency

[14] The courts have noted the ambiguity of the FACA statute generally, and the problems that would be created for the conduct of government affairs by the literal application of its terms *See, e g , Natural Resources Defense Council v Herrington*, 637 F. Supp. 116, 118–21 (D.D.C. 1986), *National Anti-Hunger Coalition*, 557 F. Supp at 530; *Center for Auto Safety v. Tiemann*, 414 F. Supp 215, 223 (D.D.C. 1976), *aff'd in part*, 580 F.2d 689 (D.C. Cir 1978), *Lombardo v Handler*, 397 F. Supp. 792, 800 (D.D.C 1975), *aff'd*, 546 F 2d 1043 (D.C. Cir 1976), *cert. denied*, 431 U.S. 932 (1977).

77

the difficulties in squaring exemption 5 and section 10. The legislative record indicates in fact that minimal attention was given on the whole to the incorporation of FOIA or its intended operation in the particular context of advisory committees.

On the Senate side, as described in the committee report from the Committee on Government Operations, the clean FACA bill sent to conference, S. 3529, reflected "a compromise between the mandatory requirements of openness and public participation contained in S. 1637 and the permissive agency option for public access contained in S. 2064 and S. 1964." Congressional Research Service, 95th Cong., 2d Sess., Federal Advisory Committee Act 166 (Comm. Print 1978) ("Legislative History"). In tandem with this controversy about access to meetings, the original three bills provided either for unrestricted access to committee records and reports, S. 1637[15] and S. 2064,[16] or did not provide for any disclosure of written material whatsoever, S. 1964.[17]

Based on the hearings and additional study, it was concluded, according to the Senate committee report, that despite "considerable opposition" "there was substantial merit in opening advisory committee deliberations and documentation to the public." *Id.* In exchange for granting the public a right of access to meetings and documents, the protections of FOIA were incorporated: "The exemptions under the Freedom of Information Act were chosen because they had received the most thorough scrutiny and consideration by the Congress in this sensitive area between public disclosure and privileged information. Further, they seemed to meet most of the objections raised as to openness during the hearings."[18] *Id.* at 166–67. The FOIA exemptions constituted a ready made legislative vehicle for balancing disclosure and privilege. The record, however, contains no additional

---

[15] The pertinent section of S 1637, sec. 10(b), pertaining to reports and records provided:

> Each Federal agency shall make available to the public for inspection and copying the records and files, including agenda, transcrips [sic], studies, analyses, reports, and any other data compilations and working papers, which were made available to or prepared for or by each advisory committee. Such records shall be maintained at a single location in each agency for a period of five years after the committee ceases to exist.

*Reprinted in* Legislative History at 135.

[16] S. 2064 provided in section 12(d), in pertinent part, as follows:

> Each Federal agency shall make available to the public for inspection and copying the records and files, including agenda, transcripts, studies, analyses, reports, and any other data compilations and working papers, which were made available to or prepared for or by each agency advisory committee (except to the extent they deal with national security matter).

*Reprinted in* Legislative History at 149.

[17] S 1964 did, however, require in section 10(d) that the Comptroller General have access, "for the purpose of audit and examination, to any books, documents, papers, and records of each statutory advisory committee." *Reprinted in* Legislative History at 143.

[18] The opposition to open meetings came "particularly from agencies whose committees dealt with such issues as national defense and foreign policy, trade secrets, matters relating to the regulation and supervision of financial institutions and markets, and information concerning the competence and character of individuals, such as that taken up by the grant review committees of the National Institutes of Health, the National Science Foundation, and NASA." *See* Legislative History at 166.

discussion that would suggest Congress was even aware of the potential conflict posed by exemption 5 as applied to section 10 of FACA.[19]

In the statute as enacted, the language of S. 3529 was adopted in full, but the structure was slightly altered. Rather than providing that all three sections would be subject to 552(b), section 10(b) was prefaced with the "[s]ubject to section 552" language. No further elucidation of the relation between FACA and FOIA was provided. Upon review, therefore, it seems fair to conclude that Congress broadly opted in favor of disclosure for advisory committees, but in response to specific problems raised, adopted FOIA as the vehicle for protecting certain classes of materials. Beyond that, however, Congress did not explain its intentions with respect to the interaction of FOIA and FACA in general or of exemption 5 in particular.

Absent apparent recognition by Congress of the problem, the proper application intended for exemption 5 is necessarily drawn from the plain language of section 10(b). At least as to deliberative, predecisional materials, such as working papers, drafts, and studies, there appears to be no doubt that Congress intended full disclosure. The enumeration in extensive detail of specific kinds of deliberative material subject to mandatory inspection and copying during the life of the committee provides the best evidence that the exemption 5 protection for deliberative materials was intended to have limited application as applied to FACA.

The legislative history reinforces the view that Congress intended the narrow application of exemption 5 to FACA. In particular, key legislators made numerous and essentially uncontradicted statements that they intended the public to be in a position to affect the committee's deliberations and that they fully intended to provide the public with access to deliberative committee materials during the committee's lifetime. For example, in sponsoring the bill on the Senate floor, Senator Metcalf, as acting subcommittee chairman within the Committee on Government Operations, which submitted S. 3529, stated:[20]

---

[19] The House bill, H.R. 4383, as amended, is even less illuminating In substance, the provision concerning reports and records seems to be closely analogous to S. 3529: "The provisions of section 552 of title 5, United States Code, shall apply to all records and files, including agenda, transcripts, studies, analyses, reports, meeting notices, and any other data, compilations, and working papers which were made available to or prepared for or by each advisory committee." Legislative History at 303. Yet the House committee report impliedly states that the reference to 552 is actually to 552(a), namely that portion of FOIA that broadly states the obligation to disclose, rather than to 552(b), which sets forth the nine exemptions:

> This provision has the effect of assuring openness in the operations of advisory committees. This provision coupled with the requirement that complete and accurate minutes of committee meetings be kept serves to prevent the surreptitious use of advisory committees to further the interests of any special interest group. Along with the provisions for balanced representation contained in § 4 of the bill, this requirement of openness is a strong safeguard of the public interest.

Legislative History at 280.

[20] In much the same vein, the subcommittee report accompanying S. 3529 quotes Senator Metcalf's remarks opening subcommittee hearings. His language, while not entirely unambiguous, would again strongly suggest that the rationale for access to committee papers includes, rather than excludes, influence on the deliberative process:

> Those who get information to policymakers, or get information for them, can benefit their cause, whatever it may be. Outsiders can be adversely and unknowingly affected. And decision-makers who

Further evidence has shown that there exists a tendency among advisory committees to operate in a closed environment, permitting little opportunity for the public to be informed of their *deliberations and recommendations, and of the materials and information on which they rely.* . . .

Thus, the legislation provides both a housekeeping function in the interests of efficiency and economy in Government and a function of disclosure and objective counsel—so that the public will know what advice their Government is *getting and how they might add their contribution to the information process.*

Legislative History at 198 (emphasis added). On the House side, Congressman Moorhead supported H.R. 4383, as amended, emphasizing the following:

Another feature of the bill which must be applauded is the requirement for public access to the deliberations and recommendations of these advisory committees. All too often, such committees meet behind closed doors, and submit advice to Executive departments without any opportunity for the public to comment on or be aware of the purport of such advice.

Legislative History at 297.

Moreover, this construction is also supported by a close reading of the express terms of exemption 5, which protects only inter-*agency* and intra-*agency* memorandums. These terms do not apply to documents prepared by and in the possession of an advisory committee because an advisory committee within the meaning of FACA is neither an agency nor a sub-group within an agency.[21] FACA specifically distinguishes between an advisory committee and an agency in its section defining statutory terms, making clear that an advisory committee is not

---

[20] (. . . continued)

get information from special interest groups who are not subject to rebuttal because opposing interests do not know about meetings — and could not get in the door if they did—may not make tempered judgments. *We are looking at two fundamentals, disclosure and counsel, the rights of people to find out what is going on and, if they want, to do something about it.*

S. Rep. No. 1098, 92d Cong., 2d Sess at 4 (1972), *reprinted in* Legislative History at 154 (emphasis added). These views are seconded by Senator Percy:

The second major element of the bill is its provisions for opening up advisory committees to public scrutiny During the extensive hearings . . ., we became convinced that there were too many instances where advisory committees were consulting with Government offices on important policies and decisions without an adequate guarantee that the public interest was being served Meetings are typically closed to the public Minutes and documents used in meetings are typically not available for public inspection.

Remarks of Senator Percy, 118 Cong. Rec. 30,274 (1972), *reprinted in* Legislative History at 202 (endorsing S. 3529).

[21] Decisions under FOIA hold that exemption 5 applies when an agency document in the possession of an agency has been transmitted by a non-agency such as Congress, *see infra* note 29 Our conclusion, however, applies only to documents that are neither prepared by an agency nor in an agency's possession.

an agency. It defines the term agency to have the same meaning as used in FOIA, 5 U.S.C. app. I, § 3(3),[22] whereas it defines "advisory committee" as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof," established by statute or reorganization plan or utilized by the President or one or more agencies "in the interest of obtaining advice or recommendations." 5 U.S.C. app. I, § 3(2). More broadly, FACA is predicated on the assumption, emphasized several times in the statute, that advisory committees give advice and recommendations,[23] whereas agencies are operating arms of government characterized by "substantial independent authority in the exercise of specific functions," *Soucie v. David*, 448 F.2d at 1073, or the "authority in law to make decisions." *Washington Research Project, Inc. v. HEW*, 504 F.2d 238, 248 (D.C. Cir. 1974). Several courts,[24] as well as this Office,[25] have construed the statutory distinction to signify that advisory committees are not agencies.[26]

---

[22] Pursuant to 5 U.S.C. § 551(1), the term "agency" is defined, subject to exceptions, as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency."

[23] FACA in several provisions underscores the self-evident function of advisory committees to provide advice. *See, e g*, 5 U.S.C. app. I, § 2(6) ("the function of advisory committees should be advisory only"); 5 U.S.C. app. I, § 9(b) ("Unless otherwise specifically provided by statute or Presidential directive, advisory committees shall be utilized solely for advisory functions."). *See also* Legislative History at 197–98 (Among the enumerated purposes of S 3529 is "to assure that the functions of Federal advisory committees shall be advisory only and that all matters under their consideration shall be determined solely by Federal officials and agencies "). To the extent FACA recognizes that advisory committees in individual circumstances might exceed their advisory function, 5 U.S.C. app I, § 9(b), (c)(F), the general conclusion that advisory committees are not agencies or divisions of agencies would need to be evaluated based on the specific powers and activities of the committee

[24] *See, e.g , Nader v. Dunlop*, 370 F. Supp. 177, 178–79 (D.D.C. 1973) (exemption 5 does not exempt from public access meetings of advisory committees to the Cost of Living Council); *Gates v. Schlesinger*, 366 F. Supp. 797, 798–800 (D D C. 1973) (same with respect to advisory committee to Department of Defense) These two cases apply to meetings, 5 U.S C app. I, § 10(d), not documentary disclosure, 5 U.S.C. app. I, § 10(b), but because they preceded the 1976 amendment to FACA which eliminated the availability of exemption 5 for meetings, but not for documents, the reasoning is applicable to documentary materials under the statute as presently written

[25] Memorandum for the Clemency Board, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel (Sept 24, 1974) (explaining that if advisory committees were considered to be agencies, the full panoply of requirements mandated by the Administrative Procedure Act would apply to committee operations).

[26] We are aware of no language in FACA's legislative history supporting the construction that advisory committees are agencies. One possible exception is a remark by Congressman Thone in reference to a provision in the House bill regarding access to advisory committee documents filed with the Library of Congress·

Subsection (b) provides that the Freedom of Information Act is applicable to this section.

This should remove any doubt as to whether advisory committees are subject to the Freedom of Information Act. Otherwise, I assume, it might be argued that advisory committees do not fall within the definition of agency in section 551(1) of the Freedom of Information Act and are, therefore, not subject to the act.

118 Cong. Rec 16,298 (1972).

This isolated remark about a provision collateral to section 10 carries little weight, especially since it runs counter to the statute's language and other legislative history *See, e g , Ernst & Ernst v Hochfelder*, 425 U S. 185, 203 n.24 (1976); *NLRB v Fruit Packers*, 377 U.S. 58, 66 (1964) Moreover, the substance of the remark is ambiguous. The congressman may have intended to say that advisory committees are agencies or, alternatively, that the Act expressly makes FOIA applicable to FACA, and therefore avoids any question whether FOIA is *independently* applicable to advisory committees as agencies. *See, e g*, Memorandum for the Clemency Board, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel at 9 (Sept. 24, 1974) ("There are two routes by which the Freedom of Information Act may be applied to the Board. One is through the Federal Advisory Committee Act. A second possible route is through the Administrative Procedure Act, of which the Freedom of Information Act is a part, if the [Clemency] Board is to be regarded as an agency, as that term is defined in the Administrative Procedure Act.")

For similar reasons, an advisory committee cannot be deemed a component within an agency whose deliberative documents are subject to exemption 5. The Act requires that all legislation authorizing an advisory committee "assure that the advice and recommendations of the advisory committee . . . not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment." 5 U.S.C. app. I, § 5(b)(3). The emphasis on independence, and on judgment, highlights the separation of committees from agencies, as do the provisions for independent staffing, 5 U.S.C. app. I, § 5(b)(4), temporary duration, 5 U.S.C. app. I, § 14, the prohibition of committees composed wholly of full-time federal officials or employees, 5 U.S.C. app. I, § 3(2), and the requirement that "[n]o advisory committee shall meet or take any action until an advisory committee charter has been filed" with the appropriate authority, 5 U.S.C. app. I, § 9(c). As the district court in *Gates*, 366 F. Supp. at 799, observed: "[T]he exchange of information does not make an advisory committee 'part of' its government agency."

The committee is not an internal organ, but again by its very nature, is a group of 'outsiders' called upon because of their expertise to offer views and comments unavailable within the agency.[27] In short, given that an advisory committee is neither an agency itself nor a component of an agency, exemption 5 cannot generally apply to FACA advisory committees' documents since by its terms it only protects "inter-agency and intra-agency memorandums."[28]

On the other hand, by its express terms exemption 5 would apply to deliberative documents prepared by an agency and delivered to the advisory committee.[29]

---

[27] Moreover, the Senate report urges that advisory committees not be formed if the agency can accomplish the advisory work internally Advisory committees are plainly meant to supplement agency resources, not duplicate them. Although the Act authorizes agency officials to call and adjourn meetings, 5 U.S.C. app. I, § 10(e) and (f), and broadly monitor the operation of advisory committees established by an agency, 5 U.S.C. app. I, § 8, these provisions implement the Act's designated purpose to rein in the operation of advisory committees, not place them within the jurisdictional confines of the agency or subject them to agency mandate on the substantive issue under review by the committee

[28] We recognize that under FOIA the courts have ruled on several occasions that materials supplied to an agency by outside experts and consultants, *see, e g., Hoover v United States Dep't of Interior,* 611 F.2d 1132, 1138 (5th Cir. 1980) (report of private appraiser); *Lead Industries Ass'n v. OSHA,* 610 F.2d 70, 83 (2d Cir. 1979) (analyses of scientific testimony prepared by consultants); or the courts, *see Durns v Bureau of Prisons,* 804 F.2d 701 (D D.C. 1986) (presentence reports); or Congress, *see, e.g., Ryan v Department of Justice,* 617 F.2d 781, 789–90 (D.C. Cir. 1980) (Senators' responses to agency's questionnaire intra-agency records), fall within exemption 5—thereby loosely construing the meaning of "intra-agency." This line of cases, however, does not alter our conclusion that an advisory committee cannot invoke exemption 5's inter-agency exemption to protect materials prepared by it and in its possession. These cases simply stand for the proposition that an agency may protect certain documents in its possession from disclosure. Accordingly, under this line of cases, when an agency makes use of advisory materials, such materials may indeed properly become deliberative documents to the agency. Section 10(b), however, imposes disclosure requirements on the advisory committee itself.

[29] This is consistent with the holding in *Aviation Consumer Action Project v Washburn,* 535 F.2d 101, 107–08 (D.C. Cir. 1976) that agencies may disclose predecisional documents to advisory committees without waiving their ability to protect the records under exemption 5, at least where such disclosures further the "free and candid exchange of ideas during the process of decision-making." It is also consistent with FOIA caselaw holding that the delivery of internal documents to Congress does not necessarily vitiate exemption 5 protection. *See, e g , Letelier v United States Dept. of Justice,* 3 GDS 82,257, 82,714 (D.D.C. 1982) ("documents reflecting consultations between CIA and Congress are protected by exemption 5 since such consultations are an integral part of the deliberative process and to discuss this process in public view would inhibit frank discussions"); *Allen v Department of Defense,* 580 F. Supp 74, 83 (D D.C. 1983) ("exemption 5 may, in an appropriate case, be applied to agency-congressional communications").

Accordingly, our construction still gives vitality to exemption 5 in the context of section 10(b) disclosure requirements. Under this construction, documents transmitted to an advisory committee by an agency do not lose the protection of an agency's deliberative process exemption under FOIA.

## Conclusion

For the foregoing reasons, exemption 5 properly applies under FACA when the agency has transmitted to an advisory committee a document that would be protected from disclosure if in the possession of the agency. Under the detailed enumeration of covered materials in section 10 of FACA, however, the advisory committees must, as a general matter, disclose the materials "made available to" the committee, "prepared by" the committee or "prepared for" the committee, so long as the committee is utilized or established by the President, an agency, or statute or reorganization plan, and then only "until the advisory committee ceases to exist." 5 U.S.C. app. I, § 10(b).

JOHN O. MCGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*